Clara SIMS and Ella Bell, Plaintiffs,

Yvetta Martin; Autherine Williams; Vanessa M. Young; Caron Rowell; Eloyse K. Seamon; and Verna L. Ward, Plaintiff-Intervenors,

v.

MONTGOMERY COUNTY COMMISSION; Mack McWhorter, W. F. Joseph, Jr., Frank Bray, Joel Barfoot, and John Knight, individually and as members of the Montgomery County Commission, their agents, servants, assigns, and successors in office; Montgomery City-County Personnel Board; Wade Moss, individually and as Director of the Montgomery City-County Personnel Board, his agents, servants, assigns, and successors in office; Walker Hobbie, Jr., individually and as Judge of Probate of Montgomery County; and Robert Smith, individually and as Chief Clerk, Montgomery County Probate Office, Defendants.

UNITED STATES of America, Plaintiff,

Yvetta Martin; Autherine Williams; Vanessa M. Young; Caron Rowell; Eloyse K. Seamon; and Verna L. Ward, Plaintiff-Intervenors,

v.

The CITY OF MONTGOMERY, ALABAMA, a municipal corporation; The Water Works and Sanitary Sewer Board of Montgomery, Alabama, a municipal corporation; Montgomery City-County Personnel Board, a state agency; Walker Hobbie, Jr., individually and as Judge of Probate of Montgomery County; and Robert Smith, individually and as Chief Clerk in the Montgomery County Probate Office, Defendants.

Civ. A. Nos. 3708–N, 3739–N.

United States District Court, M. D. Alabama, N. D.

July 1, 1982.

George Beck, Baxley, Beck & Dillard, Montgomery, Ala., for Walker Hobbie and Bob Smith.

Robert C. Black and Randall C. Morgan, Hill, Hill, Carter, Franco, Cole & Black, Montgomery, Ala., for City of Montgomery and Ronnie Adkins.

Joel F. Dubina, Jones, Murray, Stewart & Yarbrough, Montgomery, Ala., for Water Works & Sewer Bd.

Solomon S. Seay, Jr., Gray, Seay & Langford and John L. Carroll, Montgomery, Ala., for plaintiffs Clara Sims and Ella Bell.

John C. Bell, U. S. Atty., and Calvin C. Pryor, Asst. U. S. Atty., M. D. Ala., Montgomery, Ala., and Marybeth Martin, Civ.

Rights Div., Dept. of Justice, Washington, D. C., for the U. S. plaintiff.

W. Troy Massey, Massey, Means & Thomas, Montgomery, Ala., for plaintiff-intervenors.

J. Knox Argo, Argo & Enslen, Montgomery, Ala., for Montgomery County Com'n.

Robert D. Segall, Copeland, Franco, Screws & Gill, Montgomery, Ala., for Montgomery City-County Personnel Bd. and Wade Moss.

## OPINION

### MYRON H. THOMPSON, District Judge.

In the present phase of the proceedings in this action, the plaintiff-intervenors Yvetta Martin, Autherine Williams, Vanessa M. Young, Caron Rowell, and Verna L. Ward (hereinafter sometimes referred to collectively as "the intervenors") claim that they were denied employment as probate clerks in the Montgomery County probate office on the basis of their race, which is black, in violation of 42 U.S.C. § 2000e–2, otherwise known as Title VII.[1] The defendants to the intervenors' complaint are the Montgomery County Commission and the individual members thereof, that is, Mack McWhorter, W. F. Joseph, Jr., Frank Bray, Joel Barfoot, and John Knight; Walker Hobbie, Jr., judge of probate of Montgomery County; and Robert Smith, chief clerk of the probate office.[2] All the defendants except Hobbie and Smith are sued in their official capacities only; whereas, Hobbie and Smith are sued in both their official and individual capacities.

The intervenors' claims were tried before this Court on February 11, 1982.

## I.  BACKGROUND

Hobbie, as probate judge, is the "appointing authority" for the county commission and as such makes all final hiring decisions on behalf of the commission for the probate office. Subject to his approval of all final decisions, Hobbie delegated most of his personnel duties to Smith. Both Hobbie and Smith are white.

In December of 1980, Hobbie and Smith determined that the probate office was in need of several additional employees due to a change in the system of collecting automobile taxes and issuing automobile license plates, or "tags." Prior to this time, automobile taxes were collected and tags issued annually to all customers each fall, during which time Hobbie and Smith had hired "temporary busy-season" employees to help with the additional work. In the fall of 1980 the office began a conversion to a computerized tax collection system whereby tags were to be issued year-round in staggered monthly groupings. Hobbie and Smith felt that the new system necessitated the hiring of additional year-round employees in place of the temporary busy-season employees used under the prior system. Accordingly, Hobbie obtained authorization from the county commission to hire five employees for a six month period, with those positions to be converted to permanent positions if the need could be demon-

1. Jurisdiction for these claims was properly based on 42 U.S.C. § 2000e–5(f)(3). Also, the intervenors have met all precedent requirements such as filing timely charges with the Equal Employment Opportunity Commission and receiving right-to-sue notices from the commission.

The complaint filed by these five intervenors is only the most recent stage in the long history of this litigation. The original complaints in *Sims v. Montgomery County Commission*, Civil Action No. 3708–N, and *United States v. City of Montgomery*, Civil Action No. 3739–N, both filed in 1972, charged generally that the city and county of Montgomery were guilty of racially discriminatory employment practices. In August 1972 the two causes were consolidated

for all future proceedings. Pursuant to consent decrees entered in both cases, the Court specifically retained jurisdiction for the purpose of overseeing the implementation and possible future modification of its decrees. *See* October 3, 1972, order in Civil Action No. 3739–N; March 22, 1973, order in Civil Action No. 3708–N.

2. All remaining defendants to these two consolidated causes of action have been dismissed as to these proceedings involving the intervenors, but not as to the case in chief.

Also, Eloyse K. Seamon, who was originally a plaintiff-intervenor, voluntarily dismissed her claim just before trial.

strated at the expiration of the temporary appointments. Hobbie also had two permanent positions available at the time.

Smith consulted with Wade Moss, the personnel director for the city and county of Montgomery, as to the correct procedure required by the personnel department for filling the positions, in particular, the temporary positions. Moss advised Smith that to avoid having to repeat the selection process in six months in the event that the five temporary positions were made permanent, Smith and Hobbie should utilize the personnel department's permanent employee selection process for the five temporary as well as the two permanent positions. This process required selection from an applicant "register" established by the personnel department for any vacant job position. Smith consulted with Hobbie, and the two agreed that Moss' advice should be followed and the hiring conducted according to the permanent employee selection process for all seven positions.

Hobbie and Smith, in order to obtain a higher salary range for the five temporary and two permanent employees they wished to hire, had a new entry level position created. This new position was entitled "probate clerk" and paid more than the then present entry level clerk positions of "clerk II (probate)" and "clerk-typist II." No register, however, had been established for this new position level.

Therefore, in December of 1980, Smith, with Hobbie's approval, requested that a probate clerk register be established and that it be filled with applicants. Pursuant to this request, he sent Moss the desired job qualifications and a job description. The personnel department then "opened" the probate clerk register and accepted applications. Using Smith's job qualifications,[3] the department screened the applicants to insure that only the names of qualified applicants were placed on the register. The actual ranking of the applicants on the reg-

ister was done according to the time of the filing of the applications; that is, the applicants received places on the register on a "first-come first-served" basis.

However, Hobbie as the appointing authority was not permitted by personnel department rules to choose at random from the register. The rules required that the department "certify" to the appointing authority four names over and above the number of open positions, starting at the top of the register. Thus, if at the time there had been but one opening, the department would have sent and the appointing authority would have received a "certification" containing only five names; if there had been two openings, six names; and so on. Furthermore, although the appointing authority could receive more than five names under this procedure, in making each selection he could consider and select from only the first five names. Thus, after the appointing authority made one selection he could then include the sixth name from the certification so as to again raise his selection choices to five, and so on until all the available positions were filled. This selection procedure was called the rule of "one plus four."

The intervenors Martin, Young, Rowell, Ward, and Williams each applied for one of the probate clerk positions, each was found to be qualified, and each had her name placed on the register. Smith and Hobbie hired six white persons and one black person to fill the five temporary positions and the two permanent positions, and none of the persons hired was from among the five intervenors. Thus, six white persons were hired over the intervenors.

The intervenors now claim that these six white persons were selected over them for racial reasons. For reasons which follow, this Court is of the opinion that all the intervenors' claims except Martin's have merit.

**3.** Moss made some minor modifications to Smith's statement of desired qualifications. Specifically, he substituted a requirement of literacy for Smith's requirement of a high school diploma, and a requirement of "work experience meeting the public" for Smith's requirement of two years work experience.

## II. CLAIMS OF DISCRIMINATION

The proper allocation of burdens and order of proof in a Title VII discriminatory treatment case is well established. A plaintiff—in the instant case, an intervenor—has the initial burden of establishing a prima facie case of racial discrimination by a preponderance of evidence, *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981), which once established raises a presumption that the plaintiff was discharged by the defendant on racially discriminatory grounds, *id.*, 450 U.S. at 254, 101 S.Ct. at 1094. If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to rebut the presumption by producing sufficient evidence to raise a genuine issue of fact as to whether the defendant discriminated against the plaintiff. This may be done by the defendant articulating a "legitimate, non-discriminatory reason" for the discharge, a reason which is "clear and reasonably specific" and worthy of credence. *Id.*, 450 U.S. at 253, 256, 101 S.Ct. at 1093, 1095–96. The defendant has a burden of production, not one of persuasion, and thus it does not have to persuade a court that it was actually motivated by the reason advanced. *Id.*, 450 U.S. at 254, 101 S.Ct. at 1094. Once the defendant satisfies this burden of production, the plaintiff then has the burden of persuading a court that the proffered reason for the employment decision is a pretext for racial discrimination. The plaintiff may satisfy this burden by persuading the court either directly that a racially discriminatory reason more than likely motivated the defendant or indirectly that the proffered reason for the discharge is not worthy of belief. *Id.*, 450 U.S. at 256, 101 S.Ct. at 1095. By so persuading the court, the plaintiff satisfies his or her ultimate burden of demonstrating by a preponderance of evidence that he or she has been the victim of intentional racial discrimination. *Id. See also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Rohde v. K. O. Steele Castings, Inc.*, 649 F.2d 317, 321 (5th Cir. 1981).[4]

To prove a prima facie case of racial discrimination in hiring as is alleged in this case, a plaintiff must show (1) that he or she belongs to a minority; (2) that he or she applied and was qualified for a job for which the employer was seeking applicants; (3) that, despite his or her qualifications, he or she was rejected; and (4) that, after the rejection, the position remained open or was filled by a non-minority applicant. *See, e.g., Phillips v. Joint Legislative Committee on Performance and Expenditure Review*, 637 F.2d 1014, 1027 (5th Cir. 1981). Each of the intervenors has proved a prima facie case of racial discrimination. As noted above, each intervenor is black; each applied for and was qualified for one of the available probate clerk positions but was nevertheless rejected despite her qualifications; and at least one of the seven positions which each sought was filled by a white person. *See, e.g., Burdine, supra*, 450 U.S. at 253 & n.6, 101 S.Ct. at 1094 & n.6; *Danner v. United States Civil Service Commission*, 635 F.2d 427, 431 (5th Cir. 1981).

In countering the prima facie case, Hobbie and Smith submitted that in general they followed the established selection procedure and further that the whites selected were better qualified than the intervenors. However, the evidence presented at trial did not support these two proffered reasons. To the contrary, the evidence was clear that their reasons were purely pretextual and that they intentionally and deliberately refused to hire all the intervenors except Martin on the basis of race.

Substantial irregularities or improprieties in a hiring process are strong indicators of an improper, racial motive, especially when the irregularities or improprieties adversely affect primarily black applicants. *See, e.g., Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 266–68, 97 S.Ct. 555, 564–65, 50 L.Ed.2d 450 (1977); *Danner*

---

4. The new Eleventh Circuit has adopted as its precedent the case law of the former Fifth Circuit. *Bonner v. City of Prichard, Alabama*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

*v. United States Civil Service Commission, supra*, 635 F.2d at 429–33; *Kunda v. Muhlenberg College*, 463 F.Supp. 294, 308–10 (E.D.Pa.), *aff'd*, 621 F.2d 532 (3rd Cir. 1980). The procedure employed by Hobbie and Smith to select the seven probate clerks, as the following additional facts demonstrate, was riddled with substantial irregularities and improprieties which had a direct and almost singular adverse impact on the intervenors Young, Rowell, Ward and Williams.

The positions on the register of the intervenors as well as the positions of other persons who figured significantly in the selection process were reflected on the relevant portions from the register as follows:

| RANK | NAME | RACE |
|---|---|---|
| 1 | Vanessa M. Young | Black |
| 2 | Caron Rowell | Black |
| 3 | Carolyn Jones Ganous | White |
| 4 | Eloyse K. Seamon | Black |
| 5 | Verna L. Ward | Black |
| 6 | Michelle I. Bradshaw | White |
| 7 | Jane M. Hammons | White |
| 8 | Susan E. Milstead | White |
| 9 | Amy James Stovall | Black |
| 10 | Clarice B. Allen | White |
| 11 | Pamela M. Swilley | Black |
| 12 | Marianne W. Dauphine | White |
| 13 | Bessie G. Odom | White |
| 14 | Autherine Williams | Black |
|  | xxx |  |
| 20 | Yvetta Martin | Black |
|  | xxx |  |
| 40 | Shirley Hutcheson | White |

After Hobbie and Smith interviewed the top ten applicants from the register, Clarice B. Allen, who is white and number ten on the register, withdrew her name from consideration, and, accordingly, her name was removed from the register. Furthermore, Hobbie and Smith determined, for a reason undisclosed at trial, that Carolyn Jones Ganous, who is white and number three on the register, was totally unacceptable for any of the seven positions. Because of these two circumstances, Hobbie and Smith in complying with the rule of "one plus four" would have had to select at least three black persons from among the top twelve names on the list. However, for reasons which are disclosed below, the selection process resulted in the selection of only one black.

Hobbie and Smith falsely represented to Moss that Ganous [5] and Rowell [6] had removed their names from consideration, and Moss accordingly removed these two women's names from the register. With the removal of Ganous and Rowell from the register, the sphere of applicants subject to Hobbie and Smith's consideration increased to include the fourteenth name on the register, and the number of lists from which they would have to select a black person was reduced to two. At this point Hobbie and Smith filled six of the seven positions: they selected *all* of the remaining five white persons to fill the two permanent positions and three of the temporary positions; [7] and they selected Eloyse K. Seamon, one of the remaining six black persons, to fill one of the temporary positions. These selections left Hobbie and Smith with one additional temporary position to fill and with the following list from which to choose:

| RANK | NAME | RACE |
|---|---|---|
| 1 | Vanessa M. Young | Black |
| 5 | Verna L. Ward | Black |
| 9 | Amy James Stovall | Black |
| 11 | Pamela Swilley | Black |
| 14 | Autherine Williams | Black |

---

**5.** Smith told Moss, according to Moss' testimony at trial, that Ganous could not type and had excused herself from the interview. Ganous testified at trial that she never withdrew her name from consideration, that she could type well, and that in fact, the issue of her typing ability never came up during her interview with Smith. She did not have an interview with Hobbie.

**6.** Smith told Moss, according to Moss' trial testimony, that Rowell turned down one of the positions. At trial, Rowell denied this.

**7.** Bradshaw and Milstead were hired for the two permanent positions. Hammons, Dauphine, and Odom were hired for the three temporary positions.

Hobbie and Smith did not select from this list containing the names of five black applicants. Rather, they falsely represented to Moss that they needed someone experienced in ad valorem taxes to fill the remaining temporary position and that Shirley H. Hutcheson, who is white but was number forty on the register, was the only person who met this requirement. Moss, relying on this misrepresentation, approved the employment of Hutcheson with the restriction that she should never be made a permanent employee, even if her temporary position was converted into a permanent one. Hutcheson, when hired, performed regular probate clerk duties, the same duties performed by the other probate clerks hired.[8]

When Moss learned that Hobbie and Smith had misled him regarding Rowell's withdrawal and the need for Hutcheson, he wrote a letter to Hobbie requesting that the employment of Odom and Hutcheson be rescinded. However, relying on an opinion issued by the county commission's legal counsel, Hobbie informed Moss that this could not be done. Furthermore, all five of the temporary positions became permanent. It is not clear, however, whether Hutcheson was still in her position when it became permanent.

Nevertheless, Hobbie and Smith claim that the above irregularities and improprieties are not determinative. They advance that they selected the white women because they were more qualified than the black women who were not selected. They say that they employed the following two criteria in reaching this judgment: (1) prior experience using computer terminals and (2) prior experience in the probate clerk's office.

In considering these two criteria, it should be noted that subjective hiring criteria, such as these, provide a "ready mechanism" for racial discrimination, *Parson v.*

*Kaiser Aluminum & Chemical Corp.*, 575 F.2d 1374, 1385 (5th Cir.), *cert. denied*, 441 U.S. 968, 99 S.Ct. 2417 (1979), *see also Johnson's v. Uncle Ben's, Inc.*, 628 F.2d 419, 426 (5th Cir.), *vacated and remanded*, 451 U.S. 902, 101 S.Ct. 1967, 68 L.Ed.2d 290, *reinstated on remand*, 5th Cir. 657 F.2d 750 (1981), *petition for cert. filed*, 451 U.S. 902, 101 S.Ct. 1967, 68 L.Ed.2d 290 (U.S.1982) and, accordingly, should be received and considered by a court with great caution. But more significantly, the evidence received at trial squarely defeated Hobbie and Smith's claim that they relied on these two criteria. For example, although Hobbie and Smith claim the intervenors Young, Rowell, Ward and Williams were not hired because they lacked adequate computer experience, three whites were hired with no computer experience and, more significantly, Williams who had some experience was rejected. Similarly, Hutcheson, who when hired performed only general probate duties, was selected over Williams who had more probate office experience. Such uneven application of criteria is strong evidence that the criteria were never in fact employed in the selection process and were used by the employer as merely a pretext for discrimination. *McDonnell Douglas Corp. v. Green, supra*, 411 U.S. at 804, 93 S.Ct. at 1825.

Added to the above picture is the fact that Hobbie and Smith from the beginning of the selection process complained to Moss about the composition of the register and on at least one occasion discussed with Moss the racial composition of the list. Moss informed them that the procedures employed by the personnel department, including the "first-come first-served" rule and the "one plus four" rule, were devised and implemented for the specific purpose of complying with the prior orders of this Court prohibiting the county government from engaging in racial discrimination in employment.[9]

---

8. Moss testified that he would never have approved Hutcheson's employment if he had known that she was to perform only the general duties of a probate clerk.

9. Both the March 22, 1973, order in Civil Action No. 3708–N and the October 3, 1972, order in Civil Action No. 3739–N provided in part as follows:

The defendants shall conduct all hiring and personnel practices, programs, and proce-

Therefore, contrary to what Hobbie and Smith claim, the above events clearly depict a scheme carefully devised and effected by them for the sole purpose of avoiding, where possible, the hiring of any blacks for the seven probate clerk positions. These events reflect that Hobbie and Smith have acted in clear and direct contravention of the law of this land, that is, Title VII and, further, that they have flouted the orders of this Court. The intervenors Young, Rowell, Ward, and Williams, as victims of this scheme, are now entitled to appropriate relief.

However, as to Yvetta Martin, the outcome must be different. Hobbie and Smith simply never reached and considered Martin, who was number twenty on the register, and therefore Martin was never the object of any discrimination.

## III. RELIEF

A person who is a victim of a Title VII violation is entitled to be placed as near as is practicable in the position in which he or she would have been but for the discrimination, subject to some restrictions on backpay. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 419–25, 95 S.Ct. 2362, 2372–75, 45 L.Ed.2d 280 (1975). This "make-whole" relief available under Title VII includes, first, instatement to the position sought, with accompanying promotions and retirement and other benefits which the person would have received had he or she not been illegally denied employment; and, second, backpay from as far back as two years prior to the required filing of a charge with the Equal Employment Opportunity Commission or as far back as the time of the discriminatory rejection, whichever is more recent, until the time of the person's employment by the employer charged with discrimination, less any amounts the person earned or in the exercise of reasonable dili-

gence should have earned in the interim. 42 U.S.C. § 2000e–5(g). *See also Marks v. Prattco, Inc.*, 633 F.2d 1122, 1125 (5th Cir. 1981) (per curiam). The evidence at trial revealed that the intervenors Young and Ward were later employed as permanent probate clerks by the defendants.[10] Therefore, the "make-whole" relief includes instatement to the positions sought for Rowell and Williams only, but backpay, determined in accordance with the above principles, for all four prevailing intervenors.[11] Furthermore, the intervenors Young, Rowell, Ward, and Williams, as prevailing parties, are entitled to an award of reasonable attorney fees, 42 U.S.C. § 2000e–5(k), to be determined in accordance with the standards set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).

This relief should be imposed against Hobbie and Smith and against the county commission and its members, on whose behalf Hobbie and Smith were acting. *Clanton v. Orleans Parish School Board*, 649 F.2d 1084, 1094–95 & n.13 (5th Cir. 1981). However, Title VII provides no authority to hold public officials personally liable for backpay awards, *id.*, 649 F.2d at 1099 & n.19; therefore, the backpay relief should be against the defendants in their official capacities only.

An appropriate judgment will be entered.

---

dures on a non-discriminatory basis without regard to race, color, creed or national origin.

**10.** The intervenors Young and Ward were employed only when Hobbie and Smith were again restricted to an all-black five-person list from which to choose.

**11.** The Court has before it no evidence that the Montgomery County probate office cannot now absorb Rowell and Williams as additional probate clerks.