Elisha **ROBERTS**, Plaintiff,

v.

**HOUSTON COUNTY BOARD OF EDUCATION in its official capacity; and Alfred Layton in his individual capacity; and Doyle Bond, in his official capacity, Defendants.**

No. CV–90–A–1338–S.

United States District Court, M.D. Alabama, S.D.

April 21, 1993.

Paul R. Knighten, Bruce Maddox, Montgomery, AL, for plaintiff.

Jere C. Segrest, Dothan, AL, for defendants.

## MEMORANDUM OPINION

ALBRITTON, District Judge.

Plaintiff, Elisha Roberts, filed this action against the Houston County Board of Education in its official capacity, Doyle Bond, Superintendent of the Houston County School System, in his official capacity, and Alfred Layton, former Superintendent, in his individual capacity. In this action, Roberts alleged that the Houston County Board of Education ("the Board") violated his rights under 42 U.S.C. § 2000e *et seq.*, commonly referred to as Title VII of the Civil Rights Act of 1964. Specifically, Roberts claims that the Board discriminated against him because of his race when it failed to hire him as a math teacher in June, 1987.

Roberts seeks injunctive and equitable relief in the form of reinstatement, back pay, front pay, and other equitable relief. He also seeks damages and attorneys fees.

This case was tried before the court without a jury on January 12, 1993. The court heard testimony from the parties and reviewed various documents. Based upon the evidence presented at trial, the court makes the following Findings of Fact and Conclusions of Law.

## I. FINDINGS OF FACT

From the evidence presented at trial, the court finds the following facts:

This suit involves a claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Therefore, the court has jurisdiction over this cause.

Plaintiff, Elisha Roberts, is a black male. In June, 1987, Roberts applied with the Houston County Board of Education for a position as a mathematics teacher at Wicksburg High School. Plaintiff has a bachelor of science degree in mathematics from Morris Brown College in Atlanta, Georgia, and a masters degree in math education from Atlanta University in Atlanta, Georgia. He also had, at the time of his application, ten years mathematics teaching experience with students in grades eight through twelve. Plaintiff was certified to teach in both Georgia and Alabama.

Plaintiff was not hired by the Houston County Board of Education ("the Board"). Instead, Paula Tidwell was chosen. Ms. Tidwell is a white female teacher who received her bachelor of science degree in education from Troy State University in May, 1987. She brought to the job no prior teaching experience, except for a three month student teaching internship at Northview High School in the city of Dothan, Alabama. Ms. Tidwell received her teacher's certificate on August 12, 1987.[1]

The court heard testimony from three witnesses. The plaintiff offered himself as a witness. He testified as to his background and the fact that he had applied for and was rejected from the teaching position at issue. Subsequent to his denial of the job with Houston County, plaintiff was certified by the Department of Defense and served as a high school mathematics teacher for two years at Nuremburg High School, in Nuremburg, Germany.

Plaintiff stated that he applied to all of the Boards of Education which were in close geographic proximity to Fort Rucker.[2] For various reasons, he was not hired by any of the six or seven Boards of Education with which he applied.[3] Plaintiff stated that one reason for rejections from some employers was that there were no openings. Another reason cited by him was that certain employers had openings requiring non-traditional combinations of classes such as Spanish & mathematics, and history & mathematics.

Plaintiff was not notified that the position in Houston County had been filled until he contacted the Board of Education sometime in August, 1987. At that time, plaintiff was told that the position had been offered to the "best qualified person" but that applicant's identity was not disclosed. Sometime in October, plaintiff heard from persons not employed by the Board that the new math teacher at Wicksburg High School had just graduated college and had no teaching experience. He then filed a complaint with the Equal Employment Opportunity Commission (EEOC) against the Houston County Board of Education.[4] The EEOC investigated the allegations against the Board. It concluded that a likelihood of race discrimination existed based upon the facts provided by both the plaintiff and the defendants.[5] The plaintiff then filed this suit.

In defense of the suit, the defendants denied that Roberts was rejected for the position because of his race, contended that the best qualified applicant was hired, and contended that Roberts was rejected because of a negative recommendation from his prior employer.

The Board denied the plaintiff's contention that it failed to follow its own hiring policies, but claimed that it followed them in rejecting the plaintiff's application. The evidence established that on March 27, 1984, the Board adopted a Policy Manual which set out the criteria to be used in hiring new teachers. It provided as follows:

> The selection ... of professional personnel in the Houston County Schools shall be made without regard to race or color. The following non-racial objective criteria shall

1. Tidwell's certification was effective July 1, 1987—June 30, 1995, but was not issued until August 12, 1987 apparently due to a backlog in processing of certificates.

2. Plaintiff's wife was stationed at Ft. Rucker as an army chaplain in 1987.

3. Plaintiff testified that he had applied to the Boards of Education in the following locales: City of Dothan, City of Enterprise, City of Ozark, Geneva County, Coffee County, and Dale County, as well as Houston County.

4. Plaintiff also filed a complaint against the Coffee County Board of Education, but lacked sufficient facts to show a prima facie case of discrimi-

nation. The EEOC found no likelihood of discrimination by Coffee County.

5. The EEOC's investigation established that Roberts was a member of a protected class (black), he applied for the position of math teacher, he was qualified for the position, and a member of another race (white) was selected for the position. This establishes a prima facie case under Title VII. The EEOC found that an analysis of the evidence did not support the Board's position that Roberts was not the best qualified applicant. Further, as to the Board's contention that past performance references had a part to play in the rejection of Roberts, the EEOC noted that no documentary evidence was provided and that the Board's attorney stated that none existed.

be used in selecting new professional personnel ... :

(1) College transcript;

(2) State of Alabama teaching certificate;

(3) Rank and class of teaching certificate;

(4) Number of years of teaching experience within the school system;

(5) Number of years of teaching experience in public elementary or secondary schools;

(6) Degree held;

(7) Grades, subjects, or positions in which professional experience has been gained;

(8) Student teaching level and grade earned in student teaching; and

(9) Number of hours earned above degree held.

After use of non-racial objective criteria, a subjective evaluation in each of the following categories shall be made:

*Subjective Criteria:*

(1) Past performance, utilizing observation reports;

(2) Ability;

(3) Leadership; and

(4) Personality.

The subjective evaluation shall be based upon a personal interview and information obtained in individual written references.

The defense offered two witnesses: Larry Fowler, the Secondary Instructional Supervisor, and Alfred Layton, who was Superintendent of Schools in Houston County from 1984–1988. Both are white.

Fowler was the individual who conducted a personal interview with the plaintiff in June, 1987. He was also the person who checked plaintiff's references. Plaintiff listed five references on his application. Fowler contacted only two. He testified that he could not reach one after several tries, that one did not return his phone calls, and that the application listed the wrong number for one. Apparently he did not write any of these three a letter. One reference, Oliver Haney, provided a favorable recommendation, although he admitted that he had not observed the plaintiff in the classroom. The other reference Fowler contacted was Dr. Doyle Oran. Oran was principal at Radan High School in Stone Mountain, Georgia, where plaintiff had previously taught. According to Fowler's testimony, and a memorandum submitted by him to Layton on June 12, 1987 after contacting Dr. Oran, Oran had provided an unfavorable recommendation. Specifically, Fowler's memorandum cites Oran's statements that (1) plaintiff had problems communicating both orally and in written form; (2) he would rate plaintiff as "inadequate" in several areas; and (3) he would not re-employ plaintiff if other applicants were available.

Fowler stated that his memo was based upon a telephone conversation with Oran which lasted approximately thirty minutes. He testified that Oran had told of a situation in which Oran had become aware of a problem in plaintiff's oral and written communication. When plaintiff's contract came up for renewal in 1984, Oran placed as a condition for renewal a requirement that plaintiff take a Basic English course at DeKalb Community College. Plaintiff agreed preliminarily to take the Standard Written English Test and, if his score was unsatisfactory, he would take the Basic English course. Plaintiff scored in the lower twelve percent on that exam, and subsequently took the Basic English course.[6]

Fowler was unable to recall much of his personal interview with the plaintiff. He did recall that plaintiff's wife was a chaplain in the United States Army. Fowler stated that he spoke very briefly with the plaintiff, and that he then ushered plaintiff in to speak with the Superintendent, Alfred Layton.

Layton testified that he met the plaintiff and his wife, and that he also remembered that plaintiff's wife was a chaplain. Layton remembered that plaintiff had a pleasant personality, but could not remember formally interviewing him. It was Layton's belief that Fowler had conducted the interview.

There was no documentation concerning the formal interviews of any of the five candidates for the teaching position. Layton also testified that nobody ever requested either

---

**6.** Plaintiff received a grade of "A" in that course. It was unclear as to whether this was conveyed

by Oran to Fowler in their telephone conversation.

written recommendations from the plaintiff or the plaintiff's personnel records from De-Kalb County, Georgia. He stated that he had no information concerning the comparative qualifications of plaintiff and Paula Tidwell, the "best qualified person" in the eyes of the Board, who was eventually hired. Layton simply found plaintiff to not be "the best qualified person" based upon Fowler's recommendation. Fowler's recommendation was based upon his telephone conversation with Dr. Oran. Fowler did not seem to make his own judgment as to plaintiff's oral or written communication skills but rather relied on Dr. Oran's statements. Fowler had the ability to make his own evaluation of these skills. He conducted a personal interview with the plaintiff, and had on file plaintiff's application for employment. Any deficiencies should have been evident to Fowler based upon his own observations, but he did not testify as to observing any such deficiencies. The court did not observe any deficiency in oral communication skills when the plaintiff testified.

Dr. Oran was not present at the trial. Both sides, however, agreed to offer Oran's deposition as evidence.[7] Because Fowler's memorandum dated June 12, 1987 to Alfred Layton concerning Fowler's phone conversation with Dr. Oran was not produced during the EEOC investigation, and the Board's attorney indicated to the EEOC that no documentary evidence existed, the court gives little weight to the memorandum (Defendants' Exhibit 3) and to its reference to statements allegedly made by Dr. Oran to Fowler during that conversation which contradict Dr. Oran's deposition testimony, which was given while under oath. Oran's deposition is unclear as to what he might have actually stated over the phone in his conversation with Fowler.

Oran testified that, although phone conversations are a common method of providing recommendations, they are "generally ... followed up by a request for written recommendation; and in many cases [he] get[s] a request for written recommendation when there is no phone call." He further stated that any time a written recommendation is requested, he submits one, and that one was not requested in this case.

Oran confirmed that he had mentioned a "difficulty in communication, written and oral communication," Deposition of Dr. Doyle Oran p. 18, (hereinafter, "Oran's Deposition") but could not remember with whom on the Board he had spoken.

Oran also stated that he "noted an improvement even before [plaintiff] took the course," (Oran's Deposition, at 21) and after the course, "saw no problems with his written communication." (Oran's Deposition, at 22).[8]

Dr. Oran refused to sign an affidavit sent by the EEOC to him which would have him affirm the statement, "If I had to provide a reference, it would have been a favorable one." Oran said that to sign an affidavit which included that statement would not have been accurate, however, he was unwilling to say that he would have provided a recommendation which he would characterize as "unfavorable."[9]

---

**7.** Oran's deposition was offered as Defense Exhibit # 5.

**8.** Dr. Oran later testified in his deposition that he "was not absolutely convinced that there was, quote, absolutely no problem in this area left, even though I have said that I cannot document it with any written documentation or anything like that, that there was anything after this one occurrence that I've described to you." He further stated that his concern was a "personal concern based on [his] own personal working relationship with him," but that he was unable to articulate any specific deficiencies after plaintiff successfully completed the Basic English course.

**9.** Dr. Oran testified as follows:

Q. Would any recommendation on Dr. Roberts, would you characterize it as being unfavorable?

A. *I think that would depend on who's receiving the reference.* I think it would depend upon the circumstances, you know. You have to draw your own conclusions.

I testified as to what I remember with regard to an area of improvement that I thought was needed, that I believe based on their documents that I was questioned about on the telephone, the communication skills, let's say that it concerned me.

The evidence that I had and the reason that I asked him to take a basic English course, I was very concerned about that. So whether you want to call that favorable or unfavorable, I'll let you draw that conclusion.

Dr. Oran also testified in his deposition that he would have said that there was certainly a need for improvement in plaintiff's oral and written communication, though he probably would not have described such skills as "inadequate."

## II. ANALYSIS

### Claims against the Houston County Board of Education

Plaintiff's claim alleges that the defendants discriminated against him based upon his race when they failed to hire him as a secondary school mathematics teacher, in violation of 42 U.S.C. § 2000e, et seq., commonly referred to as Title VII of the Civil Rights Act of 1964.

■ In order to support a Title VII claim, a plaintiff must first establish a prima facie case of race discrimination. A plaintiff may do so in one of two ways. He may present direct evidence of discriminatory intent through actions or remarks of the employer which reflect a discriminatory attitude, or in the absence of direct evidence, the plaintiff can prove a prima facie case through circumstantial evidence. *Hill v. Metropolitan Atlanta Rapid Transit Auth.*, 841 F.2d 1533, 1539 (11th Cir.1988), *modified on other grounds*, 848 F.2d 1522 (11th Cir.1988). Plaintiff has submitted no direct evidence of discriminatory intent, but relies on circumstantial evidence.

■ In cases where the plaintiff is attempting to prove his discrimination claim through circumstantial evidence, the Eleventh Circuit has adopted the following version of the *McDonnell Douglas Corp. v. Green*,[10] test for a plaintiff's prima facie case. The plaintiff must show:

(1) that he is a member of a protected class;

Oran's Deposition, pp. 34–35.
The court finds it unclear, based upon this testimony, whether Dr. Oran would have placed an unfavorable recommendation in writing and sent it to the Board if he had been requested to write.

**10.** 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

(2) that the adverse action was taken against him, e.g. discharge, demotion, or *failure to hire*, failure to promote;

(3) that a person not a member of the protected class with equal or lesser qualifications received the position; and

(4) that he applied for and was qualified for the position.

*Carter v. Miami*, 870 F.2d 578, 582 (11th Cir.1989) (Emphasis added).

■ The Supreme Court has stressed that the prima facie showing based upon the *McDonnell Douglas* theory of circumstantial evidence "was never intended to be rigid, mechanized or ritualistic. Rather it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination." *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949–50, 57 L.Ed.2d 957 (1978). Satisfaction of the prima facie elements acts as a preliminary showing for an inference of discrimination which, if left unrebutted, would require that the plaintiff prevail at trial. Under the *Carter* test:

(1) Roberts was a black applicant for an open teaching position with the Houston County Board of Education;

(2) he was refused employment;

(3) Paula Tidwell, a white teacher with no teaching experience and a less advanced educational background than the plaintiff, was hired to fill the teaching position instead; and

(4) Roberts was qualified for the position of math teacher [11].

Thus, the plaintiff has established a prima facie case, and a very strong one. The evidence shows the plaintiff to be an extremely qualified teacher on the basis of objective criteria, and his qualifications go far beyond a borderline prima facie case.

**11.** Plaintiff had a master's degree in math education, in addition to his bachelor of science in mathematics. He had ten years teaching experience in the field of mathematics, with high school-aged students. He was certified to teach in the State of Alabama.

██ Establishing a prima facie case, however, does not conclusively establish an irrebuttable presumption of race discrimination. *See Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir.1987). Once a plaintiff displays a prima facie case under the *McDonnell Douglas* formula, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for its conduct or decision. *McDonnell Douglas*, 411 U.S. at 803, 93 S.Ct. at 1824–25.[12] This must be done by the introduction of admissible evidence showing reasons for plaintiff's rejection which are clear and reasonably specific, and worthy of credence. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 256, 101 S.Ct. 1089, 1093, 1095–96, 67 L.Ed.2d 207. If the defendant shows a legitimate, non-discriminatory reason, the plaintiff must show that the reason presented by the defendant is merely a pretext and that defendant's true reason for failing to hire the plaintiff was discriminatory. *Rollins*, 833 F.2d at 1529. The plaintiff must establish his pretext argument by a preponderance of the evidence. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981).

The *McDonnell Douglas* test was designed to ease the evidentiary burdens on employment discrimination plaintiffs, who rarely have access to direct evidence of intentional discrimination. *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 595 (11th Cir.1987). However, while the *McDonnell Douglas* framework is "a valuable tool for analyzing evidence in cases involving alleged disparate treatment[,] ... that framework is only a tool. The 'ultimate question' in a disparate treatment case is not whether the plaintiff establishes a prima facie case or demonstrates pretext, but 'whether the defendant intentionally discriminated against the plaintiff.' " *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1184 (quoting *United States Postal Service v. Aikens*, 460 U.S. 711, 714–15, 103 S.Ct. 1478, 1481, 75 L.Ed.2d 403 (1983)) *reh. den., en banc*, 747 F.2d 710 (11th Cir.1984). The court finds use of the test to be helpful in analyzing the evidence to reach the ultimate question.

Having found that the plaintiff presented a strong prima facie case, the court turns to whether the defendants have established a legitimate, non-discriminatory reason for not hiring the plaintiff. Within the question presented, there are two sub-issues. First, is whether the reason for not hiring the plaintiff was, on its face, a non-discriminatory reason. Second, is whether the reason is a legitimate one.

Defendants have advanced two reasons for their action, which they contend are legitimate and non-discriminatory: (1) that Paula Tidwell was the best qualified applicant, and (2) that a negative report on the plaintiff was received from a former employer.

██ Defendants simply presented no evidence to establish that Paula Tidwell was better qualified than Roberts. Neither Layton nor Fowler testified as to any superior qualifications of Tidwell. On the basis of all objective criteria for hiring set out in the Board's Policy Manual, Roberts's qualifications were clearly superior or equal to those of Tidwell. He had 10 years teaching experience, while Tidwell had none; he had a more advanced degree in mathematics; and he was superior in grades, subjects or positions in which professional experience had been gained. He was at least equivalent to Tidwell as to college transcript and State of Alabama teaching certificate.

As stated by the Fifth Circuit Court of Appeals in *East v. Romine, Incorporated*, 518 F.2d 332, 339 (5th Cir.1975) [13]:

[C]omparative evidence lies at the heart of a rebuttal of a prima facie case of employment discrimination. If someone is hired, and if there is more than one applicant for the position, then the decision as to which person to hire is necessarily a comparative rather than an absolute process. Intro-

---

**12.** It is important to note that the burden on the defendants is one of production, not persuasion. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. at 254–55, 101 S.Ct. at 1094–95 (1981).

**13.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued prior to October 1, 1981.

ducing evidence as to only one person does not explain how some other person was chosen. When a prima facie case of discrimination has been made out, then we cannot *presume* that the answer lies in the other person's judicially cognizable superior credentials.

The court, therefore, rejects as a legitimate, non-discriminatory reason the contention that Tidwell was better qualified than Roberts, finding such reason to be unworthy of credence.

■ Defendants advance as their next reason that plaintiff was not hired the "unfavorable recommendation" from the principal of the school at which he had previously worked. The principal had stated, according to Fowler's testimony, that plaintiff had inadequate oral and written communication skills and that he would not re-employ the plaintiff if other applicants were available. Dr. Oran, in his deposition, objected to the use of the word "inadequate", but conceded the accuracy of the general premise—that he had concerns about plaintiff's oral and written communication skills. Thus, this reason given for not hiring plaintiff, on its face, appears to be non-discriminatory.[14]

However, that reason articulated by the defendants must be legitimate as well as non-discriminatory. Whether the Board has shown a *legitimate*, non-discriminatory reason for not hiring the plaintiff must be determined by a consideration of all the evidence.

■ Although a defendant is not limited to offering only objective criteria for an employment decision, a defendant who relies on subjective criteria will subject itself to close scrutiny. *See Lee v. Russell County Board of Education*, 684 F.2d 769, 775–76 (11th Cir.1982) ("Excessively subjective and vague criteria may be insufficient because they do not allow reasonable opportunity to rebut");

*See generally, Robbins v. White–Wilson Medical Clinic, Inc.*, 660 F.2d 1064, 1067 (5th Cir., Unit B, 1981, vacated on other grounds, 456 U.S. 969, 102 S.Ct. 2229, 72 L.Ed.2d 842 (1982)) (the more subjective a defendant's proffered reason, the more difficult will be his task of meeting his burden of production).[15] Furthermore, subjective judgments are suspect as job qualifications when they are exercised by members of an all-white executive or supervisory staff. *Phillips v. Joint Legislative Committee on Performance & Expenditure Review*, 637 F.2d 1014, 1026 n. 21 (5th Cir., Unit A, Feb. 23, 1981). This is because subjective selection processes involving white supervisors provide a ready mechanism for racial discrimination. *See, Harris v. Birmingham Bd. of Educ.*, 712 F.2d 1377, 1383 (11th Cir.1983).

■ The reason given, although subjective, is not so subjective, however, that one would be incapable of objective evaluation so as to render it necessarily inadequate to meet the defendant's burden of rebuttal. *Conner v. Ft. Gordon Bus Co*, 761 F.2d 1495, 1500 (11th Cir.1985).[16] Here, the Board relied on the statement of Dr. Oran that plaintiff had poor communication skills, which led to a less than favorable recommendation. However, the Board had the opportunity to review the facts. Fowler and Layton conducted personal interviews with the plaintiff. Superintendent Layton admitted in his testimony that the best way to determine an applicant's communication skills would be to talk with that applicant and make his own determination. Yet, neither he nor Fowler could remember a single instance which they could point to and make their own individual judgments confirming Dr. Oran's comments over the telephone. The reason advanced, then, is not that Roberts had poor communication skills; it is that a previous principal

---

**14.** Oran did not confirm that he had said that he would not re-employ the plaintiff. Therefore, the court does not credit the testimony that he made such a statement and does not consider this as a reason for not hiring the plaintiff.

**15.** In *Stein v. Reynolds Secur., Inc.*, 667 F.2d 33, 34 (11th Cir.1982), the Eleventh Circuit adopted as binding precedent all decisions by any Unit B panel of the Fifth Circuit after October 1, 1981.

**16.** The fact that the non-discriminatory reason is not so subjective as to prevent objective evaluation does not legitimize the reason. The non-discriminatory reason must still be viewed in light of the evidence to determine whether it is in fact legitimate.

*said* that he had poor communication skills at one time.

The analysis does not conclude at this step, though. Normally, the courts review cases where the defendant employer has applied subjective standards or criteria, and has no established policy for hiring or other personnel decisions. Here, however, the Houston County Board of Education had an established, written policy for hiring persons to teaching positions.[17] Therefore, the defendants' articulated reason must be reviewed in light of their own established policies.

The Board has a policy for recruitment, assignment, transfer, reduction in force, resignation, dismissal and re-employment of certified personnel. This policy was adopted on March 27, 1984, and lists nine "non-racial objective" criteria, and four subjective criteria. Page one of this section of the Houston County Board of Education Policy Manual states as follows:

It shall be the policy of the Houston County Board of Education to recruit and select the best qualified applicant for each position within the school district.

It shall be the Board's policy that *no person will on the basis of race, color, creed, sex, age, physical handicap, or national origin, be denied the benefit or be subject to discrimination in any educational program or activity.* This includes employment, retention, transfer, promotion, demotion or assessment and all aspects of employee evaluation procedures.

The selection, transfer, promotion, demotion and dismissal of professional personnel in the Houston County Schools *shall be made without regard to race or color.*

This statement prefaces the non-racial objective criteria. After the objective criteria are listed, the policy manual lists the four subjective criteria. Immediately following the list of the four subjective criteria, the policy manual explains how these criteria are to be applied:

*The subjective evaluation shall be based upon a personal interview and information obtained in individual written references.*

The evidence is clear that the Board failed to correctly apply the subjective evaluation. Defendants contend that the written policy was followed and that the Board decided not to hire plaintiff based upon two of the subjective criteria: past performance and ability. The only information the Board had which led them to a negative impression of the plaintiff's past performance and ability were statements allegedly made in a telephone conversation with a past employer. The Board's witnesses were unable to point to any negative judgments they themselves formed during their personal interviews with the plaintiff. The Board also requested and received no written recommendations from plaintiff's listed references. Therefore, the subjective evaluation was not based upon a personal interview and information obtained in individual written references, as required by the Board's own Policy Manual.

The Board's employment policy is explicit in that it is intended to prevent illegal discrimination (i.e. race discrimination). The requirement that information falling under the category of the listed subjective criteria be obtained from individual *written* references is a safeguard. It is intended to prevent abuse of the subjective criteria which are a "ready mechanism" for racial discrimination. *Sims v. Montgomery County Com.,* 544 F.Supp. 420, 426 (M.D.Ala.1982).

■ Defendants contend that the subjective criteria were the basis of the Board's failure to hire the plaintiff. However, it is clear that the Board violated its own employ-

17. Although the court was not provided with evidence which explicitly states that the Board's employment policies were established by a federal court order, it can be inferred from the evidence that these policies were either established or approved by a federal court, based upon the history of desegregation in the Alabama public school system, and the following language which appears on page 2 of the Policy Manual:

The criteria utilized by the Houston County Board of Education for the above instances are formulated on a non-discriminatory basis. The only anticipated exception to this statement will be in the maintenance of the court-ordered, system-wide, black-white, faculty ratio which has been established by the Federal Courts.

ment policy (which was established to prevent exactly the kind of abuse that occurred in this case), and incorrectly applied the subjective criteria in a way which negatively impacted the plaintiff. Substantial irregularities or improprieties in a hiring process are strong indicators of an improper, racial motive. *Sims,* 544 F.Supp. at 424. *See Arlington Heights v. Metropolitan Housing Dev. Corp.,* 429 U.S. 252, 267, 97 S.Ct. 555, 564, 50 L.Ed.2d 450 (1977) ("Departure from the normal procedural sequences also might afford evidence that improper purposes are playing a role.")

The court finds that the Board has failed to articulate a *legitimate,* non-discriminatory reason for not hiring the plaintiff. To allow a reason which violates the Board's own hiring practices, established to prevent racial discrimination, to be considered "legitimate" for the purpose of rebutting the plaintiff's prima facie case of discrimination would certainly do violence to the integrity of the written policy. The Board disregarded its established hiring policies and hired an inexperienced white teacher in preference to an objectively more qualified black applicant. In so doing, it discriminated against Elisha Roberts on the basis of his race in violation of Title VII of the Civil Rights Act of 1964, and the plaintiff is entitled to relief.

### Claims against the individual superintendents: Layton & Bond

■ Alfred Layton is sued in his individual capacity. Under Title VII, defendant Layton can only be sued in his official capacity. *Busby v. Orlando,* 931 F.2d 764, 772 (11th Cir.1991) (Title VII claims made against a municipal officer must be made against that officer in his *official* capacity, not in his individual capacity) (emphasis in original).

■ As to the claim against Doyle Bond in his official capacity as Superintendent, such claim is to be incorporated into the claim against the Houston County Board of Education. A Title VII suit against an agent in his official capacity is treated as a claim against the employer—here the Board of Education. *Busby v. City of Orlando,* 931 F.2d at 772.

## III. CONCLUSIONS OF LAW

The court has jurisdiction to hear this case pursuant to 42 U.S.C. § 2000e *et seq.,* commonly referred to as the Civil Rights Act of 1964.

The plaintiff, Elisha Roberts, successfully established a prima facie case of race discrimination. He showed that: (1) he was a black applicant for a mathematics teaching position with the Houston County Board of Education; (2) he was refused employment; (3) Paula Tidwell, a white teacher with no teaching experience and a less extensive educational background, was hired to fill the teaching position instead; and (4) he was highly qualified for the position of math teacher.

The defendant Board of Education failed to articulate a legitimate, non-discriminatory reason for not hiring the plaintiff when it asserted that Tidwell was the "best qualified person." The evidence clearly shows otherwise.

The defendant Board of Education also failed to articulate a legitimate, non-discriminatory reason for not hiring the plaintiff when it asserted that such decision was based upon the subjective criteria of past performance and ability. The Board found plaintiff to be lacking in these subjective criteria when it misapplied the criteria by failing to obtain *written* recommendations. Furthermore, the basis of the unfavorable recommendation, that plaintiff lacked satisfactory oral and written communication skills, was something that the Board could have investigated. Its policies mandated the subjective criteria to be based upon a personal interview and written references. The Board failed to follow its own employment policy.

Therefore, the court finds that the Board failed to proffer a *legitimate,* non-discriminatory reason for not hiring the plaintiff and concludes that it discriminated against him on the basis of his race.

Judgment is due to be entered in favor of the plaintiff, Elisha Roberts, and against the defendant, the Houston County Board of Ed-

ucation, and the defendant Bond in his official capacity.

As to defendant Layton, who was sued in his individual capacity, Title VII does not allow suits against such officers in their individual capacities, and thus, judgment is due to be entered in favor of the defendant, Alfred Layton.

Before entering a judgment granting relief, the court will give the parties an opportunity to reach an agreement among themselves as to appropriate relief, including backpay, instatement or frontpay, and reasonable attorneys fees and costs.[18] The court will arrange for a mediator upon request of the parties and encourages this procedure. The parties are DIRECTED to advise the court jointly **by May 19, 1993,** as to whether they have reached an agreement.

A separate judgment will be entered in accordance with this Memorandum Opinion.

### *Judgment*

In accordance with the Memorandum Opinion entered this date, it is the ORDER, JUDGMENT and DECREE of the court:

1. That judgment be and it is hereby entered in favor of the plaintiff, Elisha Roberts, and against the defendants, Houston County Board of Education and Doyle Bond in his official capacity as Superintendent of the Houston County School System;

2. That judgment be and it is hereby entered in favor of the defendant Alfred Layton in his individual capacity.

3. That entry of a judgment granting relief shall be withheld until May 19, 1993, to afford the parties an opportunity to reach an agreement in that regard.

---

**18.** Plaintiff conceded at trial that the 1991 Civil Rights Act is not applied retroactively and that he would have no legal basis for a claim for legal damages.